NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNNY E. WEBB III,<br><br>                   Plaintiff,<br><br>v.<br><br>DIVERSEGY, LLC, DOMINION GAS HOLDINGS, LP, IDT ENERGY, INC., GENIE ENERGY SERVICES, LLC, f/k/a SHUK HOLDINGS LLC, LUCIEN J. TUJAGUE, JR., ALEX RODRIGUEZ, SAMIR AKHTARKHAVARI a/k/a SAM KHAVARI, and JOHN DOES,<br><br>                  Defendants. | Civil No.: 21-12088<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

      Before the Court are three motions to dismiss Plaintiff's Amended Complaint (ECF No. 92, "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Samir Akhtarkhavari a/k/a Sam Khavari ("Khavari") (ECF No. 93), Dominion Gas Holdings, LP ("Dominion") and Lucien J. Tujague, Jr. ("Tujague") (ECF No. 103), and Diversegy, LLC ("Diversegy"), Genie Energy Services, LLC ("Genie"), and IDT Energy, Inc. ("IDT") (ECF No. 104) (together, "Defendants"), a motion to strike filed by Diversegy, Genie, and IDT pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 105), and a motion for default judgment as to Alex Rodriguez ("Rodriguez") filed by Plaintiff (ECF No. 147). Plaintiff opposed Defendants' motions. ECF No. 113-2, 113-3, 113-7. Defendants replied in support of their motions. ECF Nos. 127, 128, 129. Plaintiff filed a sur-reply (ECF No. 137), and Defendants filed responses to Plaintiff's sur-reply (ECF Nos. 138, 139. 140). The Court decides this matter without oral argument pursuant

to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motions are **GRANTED** and Plaintiff's FAC is dismissed without prejudice to refile in the Superior Court of New Jersey, Essex County.

I.     **BACKGROUND**

This case arises from the sale of Diversegy, an energy brokerage and advisory company. FAC ¶ 56. Plaintiff was a founding member of Diversegy and held the position of Vice President of Sales and Marketing. *Id.* ¶ 57. On December 5, 2013, Diversegy entered into a Unit Purchase Agreement ("UPA") with Shuk Holdings LLC ("Shuk")—which later became Genie—and IDT (together, the "Buyers") to purchase all membership interests of Diversegy. *Id.* ¶¶ 78–80; *see also* ECF No. 104-3. Plaintiff claims that he was never told about the deal, and that his signature on the UPA was forged. *Id.* ¶¶ 81–82. He further complains that Diversegy failed to pay him his ownership interest from the sale or commission payments he earned prior to the sale, and that Diversegy misrepresented the value of the company. *Id.* ¶¶ 64–66, 83.

Since the UPA was executed, Plaintiff has filed two lawsuits in Texas state courts against various parties involved in the sale, including Defendants in the instant matter. *See id.* ¶¶ 89–100, 117–127. In the first lawsuit, filed on August 27, 2014 (the "August 2014 Petition"), the trial court held that the UPA was enforceable as to Plaintiff, and dismissed Plaintiff's case without prejudice because of the UPA's forum selection clause, which designates "the state or federal courts in Essex County, New Jersey" as the "exclusive jurisdiction" for any actions arising out of or relating to the UPA. *Id.* ¶ 121; ECF No. 104-3; *Webb v. Rodriguez*, No. 06-14-00102-CV, 2015 WL 3486175, at *3 (Tex. App. June 3, 2015). The Texas Court of Appeals affirmed the trial court's decision. FAC ¶ 100; *Webb*, 2015 WL 3486175, at *3. In the second lawsuit, the Texas trial court once again dismissed Plaintiff's case without prejudice to filing in the appropriate forum in New Jersey,

and the court of appeals affirmed, citing collateral estoppel. *See Webb v. Diversegy, LLC*, No. 05-17-01258-CV, 2019 WL 1146707, at *5, 7 (Tex. App. Mar. 13, 2019). Plaintiff now brings this action, which also alleges misconduct arising from the sale of Diversegy.

## II. **LEGAL STANDARD**

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of a complaint, a court must "draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of 'further factual enhancement,'" will not withstand dismissal. *Iqbal*, 556 U.S. at 678 (citations and brackets omitted).

## III. **DISCUSSION**

Plaintiff alleges violations of the Securities Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, as well as other unspecified securities and antitrust laws against all Defendants. Plaintiff also asserts numerous state law claims. As discussed below, Plaintiff's federal claims are barred by the applicable statute of limitations and statute of repose, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

A. **Statutes of Limitations and Repose**[1]

Plaintiff's federal law claims—violations of section 10(b) of the Securities Exchange Act, 15 U.S.C.S. §§ 78j(b), and 17 C.F.R. § 240.10b-5 (Counts A and L)—are time-barred.[2] Section 10(b) and Rule 10b-5 claims are subject to a statute of limitations and a statute of repose. *See* 28 U.S.C. § 1658; *see also Aly v. Valeant Pharms. Int'l Inc.*, 1 F.4th 168, 171 (3d Cir. 2021) ("[C]laims under Section 10(b) [and] Rule 10b-5 . . . [are] subject to the same two-year limitations and five-year repose periods."). As discussed below, Plaintiff's securities fraud claims are barred by both.

1. **Statute of Limitations**

The statute of limitations requires securities fraud claims to be "brought within '2 years after the discovery of the facts constituting the violation.'" *Aly*, 1 F.4th at 171 n.12 (quoting 28 U.S.C. § 1658(b)). The limitations period "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first." *Catalyst Dynamic Alpha Fund v. Valeant Pharms. Int'l, Inc.*, No. 18-12673, 2019 WL 2331631, at *4 (D.N.J. May 31, 2019) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010)).

---

[1] "The statute of limitations defense may be considered on a motion to dismiss, but only on the basis of the face of the complaint and other items properly considered on a Rule 12(b)(6) motion." *Cresci v. Gyess*, No. 17-2342, 2018 WL 4961466, at *11 n.18 (D.N.J. Oct. 15, 2018), *aff'd sub nom. Cresci v. Gyss*, 792 F. App'x 226 (3d Cir. 2020). Given that the statute of limitations issue is apparent on the face of the FAC, the Court may properly consider the statute of limitations defense in deciding Defendants' motions.

[2] Plaintiff also alleges, in Count M, a "violation of certain other securities and antitrust laws," but does not identify any statute or describe any conduct that constitutes a violation of federal law, other than the securities laws alleged in Counts A and L. *See* FAC ¶¶ 262–66. "Defendants must have notice of the specific laws Plaintiffs allege they have violated." *Boyd v. New Jersey Dep't of Corr.*, No. 12-6612, 2013 WL 1163507, at *8 (D.N.J. Mar. 18, 2013); *see also Wharwood v. Chief Fin. Officer-Wells Fargo Bank N.A*, No. 19-16590, 2020 WL 3567316, at *7 (D.N.J. July 1, 2020) (dismissing claims where the "Complaint does not adequately identify what laws the Defendants violated"). Therefore, Plaintiff's claims related to unspecified federal statutes (Count M) are dismissed.

Defendants contend that Plaintiff's claims arise out of the same allegations brought in his August 2014 action in Texas state court. Thus, the latest Plaintiff can claim he "discover[ed] facts constituting the violation" is August or September 2014. *Merck*, 559 U.S. at 653. Plaintiff has two arguments in response. First, he argues that he "did not have knowledge of [Defendants'] scienter," an element of the securities fraud claim, at the time of his first Texas lawsuit. ECF No. 113-3 at 25–28; ECF No. 113-2 at 14–21. Second, Plaintiff contends that equitable tolling should preserve his claims. *See* ECF No. 137.

As an initial matter, the Court agrees with Defendants that the instant action arises from the same allegations as Plaintiff's August 2014 lawsuit. In this matter, Plaintiff states that "[a]ll of the claims herein arise out of the same course of fraudulent and deceitful conduct by all Defendants," FAC ¶ 42, and that "all of Plaintiff's claims arise from and are related to the forged UPA," ECF No. 113-3 at 19. This "course of fraudulent and deceitful conduct" was the basis of the lawsuit initiated by Plaintiff in August 2014, in which he alleged fraud, misrepresentation, conversion, breach of contract, and breach of fiduciary duty in connection with the execution of the UPA. FAC ¶¶ 91–92; ECF No. 103-4 ¶ 51. In his August 2014 Petition, Plaintiff alleged that certain Defendants "concealed" the total debt owed Plaintiff to "increase the valuation of the company," ECF No. 103-4 ¶¶ 36, 44–45, and "misrepresented material facts concerning the debts and liabilities of Diversegy," *id*. ¶¶ 41, 54, 65. Plaintiff first alleged that his signature on the UPA was forged in a September 2014 opposition brief, in which he alleged that "the UPA was entered without his authorization," citing cases about forgery. *See* ECF No. 103-6, Ex. C.

The allegations in Plaintiff's August 2014 Petition and his September 2014 opposition brief show that he had "discover[ed] the facts constituting" the alleged securities fraud by

5

September 2014 at the latest. *Merck*, 559 U.S. at 653. Plaintiff's allegations in the instant action do not appear to differ from those in his August 2014 Petition and September 2015 opposition brief. In this action, like in the Texas action, Plaintiff alleges that, in connection with the sale of Diversegy, Defendants misrepresented Diversegy's value and other material information, underreported debts, and forged Plaintiff's signature on the UPA. FAC ¶¶ 9, 86, 129–38. Given that Plaintiff's August 2014 Petition and the September 2014 opposition brief allege what appears to be the same wrongdoing arising from the same events as alleged here, the Court concludes that Plaintiff "did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting" the present securities fraud claims by September 2014 at the latest. *Catalyst*, 2019 WL 2331631, at *4.

While Plaintiff contends that he "did not have knowledge of [Defendants'] scienter," a necessary element of a securities fraud claim, at the outset of his Texas action, his argument is unavailing. In the context of securities fraud, "scienter" is "a mental state embracing intent to deceive, manipulate, or defraud." *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 192 (3d Cir. 2000). Plaintiff clearly alleged that Defendants had scienter in the August 2014 Petition. The August 2014 Petition states that Defendants "purposefully failed to disclose" debts owed to Plaintiff, ECF No. 103-4 ¶ 55, that the "concealment of this information was purposeful and malicious," *id*. ¶ 57, and that Defendants had "knowledge that the purchase price would not cover all debts and obligations owed by the company," *id*. ¶ 73. Therefore, Plaintiff has shown that he did, in fact, have knowledge of Defendants' scienter in August 2014. To the extent Plaintiff argues that he did not know specific details regarding Defendants' scienter, the Court notes that the limitations period is "not postponed until the injured party knows

6

every fact necessary to bring his action." *Danysh v. Eli Lilly and Co.*, 461 F. App'x 75, 77 (3d Cir. 2012).

Plaintiff's second attempt at preserving his claims involves equitable tolling. Under the doctrine of equitable tolling, courts may "pause" the statute of limitations clock from the time a plaintiff brought his initial action in an improper forum until it was dismissed based on such improper forum, at which point the plaintiff is aware that he filed in the incorrect forum. *See Makozy v. Dietz*, No. 20-3050, 2022 WL 17335815, at *1 (3d Cir. Nov. 30, 2022). While it is true that Plaintiff filed the August 2014 Petition in the wrong forum, equitable tolling does not save his claims.

Plaintiff asserts that "the parties were in continuous litigation from September 2014 to September 2019 in Texas," and so the statute of limitations should be tolled until September 2019. ECF No. 137 at 3. But this misrepresents the nature of the litigation. Plaintiff's first Texas action was dismissed based on the UPA's forum selection clause on September 23, 2014. ECF No. 103-8. The Texas trial court held that the UPA was enforceable against Plaintiff, and so the forum selection clause applied. *Webb*, 2015 WL 3486175, at *3. Plaintiff then appealed that decision, which the Texas Court of Appeals affirmed on June 3, 2015. *Id.*; FAC ¶ 100. The Court of Appeals clearly stated that it affirmed the trial court's dismissal "without prejudice to the refiling of same in state or federal court in Essex County, New Jersey, the forum specified in the [UPA]." *Webb*, 2015 WL 3486175, at *1. It does not appear that Plaintiff appealed the Court of Appeals' decision. Therefore, by June 3, 2015, it is beyond doubt that Plaintiff knew Texas was the wrong forum, and so the statute of limitations clock resumed running. The statute of limitations for securities fraud claims is two years, and so, even if the Court applies equitable tolling here, Plaintiff was

7

required to file his claims in a New Jersey court by June 2017, at the latest. But he did not file the instant lawsuit until June 2, 2021. *See* ECF No. 1.

The "continuous litigation" until September 2019 to which Plaintiff refers involved an arbitration and a second lawsuit in Texas—neither of which affects the Court's conclusion. In December 2015, Nicholas Gallagher and Dominion—majority shareholders of Diversegy prior to the sale—initiated an arbitration against the Buyers related to payments owed under the UPA. FAC ¶¶ 101–02. The Buyers brought crossclaims against Plaintiff in its answer. *Id.* ¶ 103. Plaintiff objected to the arbitrator's jurisdiction over him, claiming again that the UPA was not enforceable against him. *Id.* ¶ 113. In September 2016, the arbitrator stayed the proceeding, directing Plaintiff to bring his lawsuit on the issue of forgery in "a court of appropriate jurisdiction." *Id.* ¶ 115. Despite the Texas Court of Appeals' June 2015 order, Plaintiff again brought his lawsuit in Texas, not New Jersey. The trial court again dismissed his case on the basis of forum selection, the Texas Court of Appeals affirmed, and the Supreme Court of Texas denied Plaintiff's petition for review on September 6, 2019. FAC ¶¶ 117–23; *Webb*, 2019 WL 1146707, at *7.

Given this context, it is clear that the statute of limitations for Plaintiff's securities fraud claims should not be tolled until September 2019. In its June 3, 2015, decision, the Texas Court of Appeals held that Plaintiff entered into the UPA. *Webb*, 2015 WL 3486175, at *3 ("[Defendant] satisfied his initial burden to show that the parties agreed to an exclusive forum . . . . [T]he trial court appropriately exercised its discretion to conclude that the forum selection clause was valid and enforceable against Webb."). Plaintiff could have appealed this decision, but did not. Instead, he filed a second action in Texas state court, again challenging the enforceability of the UPA, a claim the Texas trial court and appeals court

8

already rejected. *Webb*, 2015 WL 3486175, at *3. Accordingly, by June 3, 2015, at the latest, Plaintiff knew that his claims belonged in New Jersey. The Court will not toll the statute of limitations through the conclusion of his second lawsuit, which merely sought to relitigate a claim already denied by the Texas Court of Appeals.

This conclusion is particularly warranted given that equitable tolling affords relief only from "inflexible, harsh or unfair application of a statute of limitations." *Harrell v. Dep't of Treasury*, No. A-3628-18T3, 2020 WL 898124, at *7 (N.J. Super. Ct. App. Div. Feb. 25, 2020). In this context, "the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Freeman v. State*, 788 A.2d 867, 879 (N.J. App. Div. 2002). For the reasons discussed above, this is clearly not such a rare situation. Therefore, the two-year statute of limitations bars Plaintiff's securities fraud claims.

### 2. Statute of Repose

In any event, Plaintiff's federal securities fraud claims are also barred by the five-year statute of repose. The statute of repose requires securities fraud claims to be brought "no later than '5 years after'" the date of the alleged violation, regardless of whether the statute of limitations has been triggered. *Aly*, 1 F.4th at 171 n.12 (quoting 28 U.S.C. § 1658(b)). In other words, "statutes of repose start upon the occurrence of a specific event and may expire before a plaintiff discovers he has been wronged or even before damages have been suffered at all." *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199 (3d Cir. 2007), as amended (Nov. 20, 2007). In securities fraud cases, the repose period begins on "on the date that the allegedly false or misleading statement underlying the claims was made." *Liebholz v.*

9

*Harriri*, No. 05-5148, 2006 WL 2023186, at *7 (D.N.J. July 12, 2006) (quoting *In re Exxon Mobil Corp.*, 387 F. Supp. 2d 407, 421 (D.N.J. 2005)).

Here, the allegedly false or misleading statements were made during or prior to December 2013, more than five years before Plaintiff filed the instant action. The UPA was executed, and Plaintiff's signature was allegedly forged, on December 5, 2013. FAC ¶¶ 80, 133. Plaintiff alleges that Defendants misrepresented Diversegy's value and other material information, underreported debts, and forged Plaintiff's signature, all for the purpose of securing the Buyers' agreement to the UPA. FAC ¶¶ 9, 86, 129–38. Given that Plaintiff's allegations of false and misleading statements were intended to persuade the Buyers to enter into the UPA, and the Buyers entered into the UPA in December 2013, any such misrepresentations necessarily occurred by that date. Plaintiff filed the instant action on June 2, 2021, more than five years after December 2013. *See* ECF No. 1. Therefore, Plaintiff's securities fraud claims are time-barred by the five-year statute of repose set forth in 28 U.S.C. § 1658.

Plaintiff urges the Court to apply the doctrine of equitable tolling to preserve its otherwise time-barred claims. But "statutes of repose are not subject to equitable tolling." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 508 (2017) ("The purpose and effect of a statute of repose . . . is to override customary tolling rules arising from the equitable powers of courts. . . . [T]he Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling."); *accord Aly*, 1 F.4th 173; *Du v. Segelman*, No. 23-6780, 2025 WL 1707176, at *12 (E.D.N.Y. Mar. 28, 2025) ("[A]ctions under Rule 10b-5 are subject to a five-year statute of repose, 28 U.S.C. § 1658(b), which is an absolute bar on liability and is not subject to equitable tolling[.]").

10

Plaintiff also contends that the securities fraud misconduct was "committed with every payment made" under the UPA. FAC ¶ 134. Even if the Court accepted this argument, the statute of repose would still bar Plaintiff's securities fraud claim. The final payment under the UPA was to be made "[o]n the eighteen (18) month anniversary of the Closing." ECF No. 104-3. The closing was on December 5, 2013, and so the eighteen-month anniversary was June 5, 2015. FAC ¶ 80. The FAC contains no allegations that suggest a payment was made after that date. Even if the Court found that the statute of repose five-year period began on June 5, 2015, that is still more than five years before the filing of the instant action: June 2, 2021. For these reasons, Plaintiff's federal securities fraud claims are time-barred, and thus dismissed.

**B.     Subject Matter Jurisdiction Over Plaintiff's State Law Claims**

Given that Plaintiff's federal claims are barred by the statute of limitations and statute of repose, the Court lacks federal question jurisdiction under 28 U.S.C. § 1331. The Court also lacks diversity jurisdiction under 28 U.S.C. § 1332.

Under 28 U.S.C. § 1332(a), district courts have subject matter jurisdiction over civil actions between "citizens of different states" in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Where subject matter jurisdiction is premised on diversity, there must be complete diversity, which "means that the plaintiff cannot be a citizen of the same state as any of the defendants." *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013). "A natural person is deemed to be a citizen of the state where he is domiciled" and "[a] corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104–05 (3d Cir. 2015). "[A] limited liability company is a citizen of all the

11

states of its members." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018). A limited partnership "is a citizen of every state in which its general and limited partners are citizens." *Carden v. Arcoma Assoc.*, 494 U.S. 185, 195–96 (1990).

Here, Plaintiff is a resident of Harris County, Texas. FAC ¶ 32. Therefore, to meet the complete diversity requirement, none of the Defendants can be a citizen of Texas. But at least three defendants, Tujague, Rodriguez, and Khavari, are alleged to be citizens of Texas. FAC ¶¶ 37–39. This alone defeats complete diversity. Additionally, Plaintiff asserts that Diversegy, LLC "is a limited liability company authorized to do business in Texas" and Dominion Gas Holdings, LP "is a Texas limited partnership." *Id.* ¶¶ 33–34. The Complaint does not specify the members or partners of either entity, or their citizenship, and the Court will not assume as much. Either way, the citizenship of Tujague, Rodriguez, and Khavari destroys complete diversity, and so the Court cannot exercise subject matter jurisdiction on the basis of diversity jurisdiction.

Given that the Court lacks diversity jurisdiction and has dismissed Plaintiff's federal claims, the only way this Court can retain this case is if it exercises supplemental jurisdiction over the state law claims. But a district court "may decline to exercise supplemental jurisdiction [over state law claims] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants." *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (citations omitted).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. "The motion to dismiss stage is an early stage in the litigation, and, therefore,

12

dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties." *Allstate N.J. Ins. Co. v. Summit Pharmacy, Inc.*, No. 13-5809, 2014 WL 1767528, at *13 (D.N.J. May 2, 2014). Given that the state law claims are more suitable for state court disposition, the Court declines supplemental jurisdiction. *Hardy v. Gloucester Cnty.*, No. 15-3714, 2017 WL 5001986, at *4 (D.N.J. Nov. 2, 2017) ("There is . . . a strong policy of allowing state courts to decide state matters.").

### IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motions to dismiss are granted.

**Accordingly, IT IS**, on this 21st day of August, 2025,

**ORDERED** that Defendants' motions to dismiss (ECF Nos. 93, 103, 104) are **GRANTED**; and it is further

**ORDERED** that Defendants' motion to strike (ECF No. 105) is **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's motion for default judgment (ECF No. 147) is **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's Amended Complaint is dismissed without prejudice to refile in the Superior Court of New Jersey, Essex County; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**